UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

W. BRUCE HUBBARD and                              CIV. NO. 13-337(MJD/JSM)
DONNA M. HUBBARD,

        Plaintiffs,                              REPORT AND RECOMMENDATION

v.

PNC BANK NATIONAL ASSOC. and
FEDERAL HOME LOAN MORTGAGE CORP.,

        Defendants.

The above matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 13]; Plaintiffs' Motion for Preliminary Injunction [Docket No. 19] and plaintiffs' Motion to Amend Their Complaint [Docket No. 33]. Jonathan D. Miller, Esq. appeared on plaintiffs' behalf. Ellen A. Brinkman, Esq. and Danielle Fitzsimmons, Esq. appeared on defendants' behalf. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).[1]

## I.  BACKGROUND

### A.  Plaintiffs' Complaint

Plaintiffs W. Bruce Hubbard and Donna M. Hubbard sued defendants in state district court on January 22, 2013. Notice of Removal, p. 1 [Docket No. 1]. Defendants removed the matter to Federal District Court on February 11, 2013. Id.

---

[1]    Plaintiffs' Motion to Amend Their Complaint is not a dispositive motion and was not included in the district court's order of referral. [Docket No. 24]. Nonetheless, because the motions are intertwined, this Court has considered all three of the motions in this Report and Recommendation.

The facts as alleged in the Complaint are as follows. Plaintiffs purchased property located at 260 Ridgeview Drive, Wayzata, Minnesota ("property") in 1967. Complaint, ¶7 [Docket No. 1-1]. Plaintiffs refinanced their mortgage with National City Mortgage Company on or about August 20, 2003. Id., ¶8. Plaintiffs' new monthly payment was $2,121.93—it was comprised of $1,807.03 in principal and interest and $314.90 in escrowed taxes. Id., ¶9. As a result of personal financial reversals, plaintiffs missed several mortgage payments in early 2009. Id., ¶9. Plaintiffs requested a loan modification from National City and submitted an application for a loan modification under the Home Affordable Modification Program ("HAMP") by mail on May 13, 2009, and by facsimile on May 14, 2009. Id., ¶13.

Plaintiffs received a Trial Period Plan ("TPP") modification effective September 1, 2009, which increased their monthly loan payment to $2,361.69. Id., ¶14. Plaintiffs contacted National City about the increased monthly payment, but National City did not revise the monthly payments. Id., ¶¶15, 16. Plaintiffs made a payment in September 2009, but could not afford to make any additional payments. Id., ¶17. PNC National Bank Association ("PNC") obtained an assignment of the mortgage from National City and became responsible for the loan and modification no later than October 1, 2009. Id., ¶18. In December 2009, PNC provided plaintiffs with a TPP modification extension, which continued the same payment amount as the initial TPP. Id., ¶19. Plaintiffs made a payment under the modified TPP, but PNC returned the payment to them because it was not in certified funds and did not cure the existing default amount. Id., ¶20. Plaintiffs tried unsuccessfully to determine the amount they were in default. Id., ¶¶21, 23. In July 2010, PNC denied plaintiffs' request for a modification and demanded a

payment of $38,173.28. Id., ¶24. On November 21, 2010, plaintiffs applied to PNC for another loan modification. Id., ¶26. On February 21, 2011, plaintiffs received a loan modification[2] ("Loan Modification") but the modification did not reduce the amount of their monthly payment or the interest rate, which plaintiffs alleged was the purpose and objective of obtaining a modification. Id. ¶¶28, 29.

Plaintiffs made payments under the Loan Modification on June 3, 2011, June 29, 2011, and July 29, 2011, but then stopped making payments and could not pay what PNC claimed was their default amount. Id., ¶¶32-36, 41. PNC asked that plaintiffs re-submit an application for modification. Id., ¶42. PNC served a notice of foreclosure on plaintiffs on February 27, 2012, and the property was sold at a foreclosure sale on April 10, 2012. Id., ¶¶43, 44. PNC assigned its interest in the property to Freddie Mac by limited warranty deed on May 7, 2012. Id., ¶45. The redemption period ended on October 10, 2012, and Freddie Mac commenced an eviction action on January 10, 2013. Id., ¶48. This action followed.

Based on these facts, plaintiffs pled the following causes of action:

Count I alleged that PNC violated Minn. Stat. §58.13, subd. 13, which precludes a residential mortgage servicer from making a residential mortgage loan with the intent that the loan will not be repaid and that the mortgage originator would obtain title to the property through foreclosure. Id., ¶¶49-54.

Count II alleged that PNC breached its duty of good faith and fair dealing because the Loan Modification was inconsistent with the parties' intentions and plaintiffs' financial circumstances. Id., ¶¶55-59.

---

[2] The relief plaintiffs seek in the instant suit relates to this 2011 loan modification. Id., Prayer for Relief, ¶¶2.

Count III alleged fraud and misrepresentation against PNC, stating that PNC induced plaintiffs to enter into the Loan Modification by representing that their monthly payments would be reduced. Id., ¶¶60-69.

Count IV alleged that PNC violated the Minnesota Consumer Fraud Act ("MCFA"), Minn. Stat. §325F.69, et. seq. by making false promises, misrepresentations, misleading statements and by using deceptive practices in connection with the loan modification and its inducement of plaintiffs to enter into the loan modification. Id., ¶¶70-76. Plaintiffs alleged they could assert a private right of action under the MCFA based on the private attorney general statute, Minn. Stat. §8.31, subd. 3a, because their action served a public benefit. Id., ¶73.

Count V sought a temporary and permanent injunction against Freddie Mac to prevent Freddie Mac from evicting plaintiffs from the property. Id., ¶¶77-79.

As relief, plaintiffs sought damages in excess of $50,000, rescission of the foreclosure and loan modification, and a permanent and temporary injunction preventing Freddie Mac from evicting plaintiffs. Complaint, Prayer for Relief, ¶¶1-4.

Defendants moved to dismiss plaintiffs' Complaint [Docket No. 13]. Shortly thereafter, plaintiffs moved for a preliminary injunction staying the eviction proceedings pending in Hennepin County District Court. [Docket No. 19]. Plaintiffs then moved for leave to amend their Complaint to delete a claim (breach of the duty of good faith and fair dealing), add two new claims (equitable estoppel and contract reformation), and beef up their remaining claims. [Docket No. 33].

## II.    LEGAL STANDARDS

### A.    Motions to Dismiss and for Leave to Amend

Defendants have moved for dismissal under Rule 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  Ossman v. Diana Corp., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 662 (internal quotation marks and citations omitted).

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court.  See, e.g., Niagara of Wisconsin Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  The Eighth Circuit has held that "[a]lthough

amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson v. Cape Girardeau County, 88 F.3d 647, 650-1 (8th Cir. 1996) (citing Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir. 1989); Chesnut v. St. Louis County, 656 F.2d 343, 349 (8th Cir. 1981)). Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

"Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the Twombly pleading standard…." See Zutz v. Nelson, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted)); In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (denying a motion to amend on the basis of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion."); United States ex. rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim…"), cert. denied 536 U.S. 925 (2002); DeRoche v. All American Bottling Co., 38 F. Supp.2d 1102, 1106 (D. Minn. 1998) ("Although we begin with a presumption of liberality, an amendment to a pleading can be successfully challenged on ground of futility if the claims created by the amendment would not

withstand a Motion to Dismiss for failure to state a claim on which relief can be granted.")

## B.    Preliminary Injunctive Relief

A preliminary injunction "is an extraordinary remedy never awarded as a matter of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 9 (2008). "When evaluating whether to issue a preliminary injunction a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." West Publ'g. Co. v. Mead Data Cent., Inc., 799 F.2d 1219, 1222 (8th Cir. 1986), cert. denied, 479 U.S. 1070 (1987) (citation omitted). "If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor." Gottlieb v. Willis, Civ. No. 12-2637 (PJS/JSM), 2012 WL 5439274 at *2 (D. Minn. Nov. 7, 2012) (citing CDI Energy Servs., Inc. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009) ("the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied"); Mid–America Real Estate Co. v. Iowa Realty Co., 406 F.3d

969, 972 (8th Cir. 2005) ("an injunction cannot issue if there is no chance of success on the merits").

With these standards in mind, the Court turns to the parties' motions.

## III.  DISCUSSION

### A.  Defendants' Motion to Dismiss and Plaintiffs' Motion for Leave to Amend [Docket Nos. 13, 33]

Defendants argued that plaintiffs' claims under Minn. Stat. §§58.13 and §325F.69, et. seq. failed because plaintiffs do not have a private right of action to assert such statutory violations.  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem. Dismiss"), pp. 6-8, 13-15.  [Docket No. 15].  Further, defendants submitted that Minn. Stat. §58.13, which prevents predatory lending, does not apply to this case, where PNC did not loan plaintiffs any money.  Id., p. 8.  Rather, the Loan Modification simply reaffirmed what plaintiffs already owed PNC and put in place a new payment schedule for repayment.  Id., pp. 8-9.  Defendants also asserted that plaintiffs' claims for breach of the covenant of good faith and fair dealing failed because Minnesota law does not recognize such a breach independent of a claim of breach of contract.  Id., p. 9.  Here, because plaintiffs did not allege a breach of contract, they could not allege breach of the covenant of good faith and fair dealing.  Id., p. 10.

Defendants further contended that the heightened pleading standard required by Fed. R. Civ. P. 9(b) for fraud applies to claims of fraud and under the MCFA and plaintiffs did not meet that standard.  Id., pp. 12, 15-16. In addition, to the extent that a representative of PNC made any oral statements to plaintiffs regarding their monthly payments, the Loan Modification document clearly stated the new monthly payments

8

and, therefore, plaintiffs could not reasonably rely on prior oral statements regarding their monthly payments. Id.

Defendants also claimed that plaintiffs could not obtain the relief they seek—rescission of the foreclosure sale—because state law prohibits a collateral attack on a foreclosure sale after the statutory redemption period has passed. Id., p. 17. Nor could plaintiffs obtain injunctive relief, because an injunction is a remedy and not a cause of action, and a cause of action must exist before injunctive relief may be granted. Id. (citing Smith v. Spitzenberger, 363 N.W.2d 470, 472 (Minn. Ct. App. 1985)).

Lastly, defendants argued that Freddie Mac had to be dismissed from the suit because plaintiffs failed to allege any wrongdoing by Freddie Mac. Id.

Plaintiffs responded that the motion to dismiss should be denied and they should be allowed to amend their Complaint to cure certain deficiencies. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Mem. in Opp. Dismiss"), pp. 2-3 [Docket No. 28]. For example, plaintiffs' proposed First Amended Complaint ("FAC") alleged "on information and belief" that PNC engaged in similar behavior with other borrowers, and consequently they should be allowed to proceed under Minn. Stat. §8.31 to bring claims under Minn. Stat. §§58.13 and 325F.69, et. seq.. Id., pp. 2-3, 25-28. Affidavit of Jonathan D. Miller, Ex. B (FAC), ¶31 [Docket No. 36-2]. Plaintiffs also disagreed that they could not seek rescission of the foreclosure following the expiration of the redemption period, noting that under certain circumstances such an action was allowed. Id., pp. 28-29.[3]

---

[3] To support this argument, plaintiffs cited Stein v. Chase Bank USA, NA, Civ. No. 10-203 (PJS/JSM), 2011 WL 882088 at *1 (D. Minn. Mar. 11, 2011). There, Judge Schiltz noted that state law does not prohibit a direct attack on a foreclosure sale after

The FAC added claims for equitable estoppel and contract reformation, deleted plaintiffs' claim of breach of the covenant of good faith and fair dealing, more fully explained the public benefit conferred by their suit (which would allow them to proceed under the private attorney general statute), and expanded their fraud allegations. Plaintiffs' Memorandum of Law in Support of Motion to Amend Complaint ("Pl. Mem. Amend"), p. 3 [Docket No. 35].  Unlike the original Complaint, the FAC alleged all claims against both PNC and Freddie Mac.

Plaintiffs argued that economy dictated that the FAC be permitted.  Id., pp. 6-8. Plaintiffs pointed out that allowing the amendment at this stage instead of after a dismissal without prejudice, would avoid the necessity of plaintiffs beginning a new action based on the amended complaint and then facing a second motion to dismiss from defendants.  Id., p. 7.  Plaintiffs further argued that the amendments should be allowed because they were not futile.  Id., pp. 7-8.

Defendants opposed the motion for leave to amend, contending that the proposed amendments were futile.  According to defendants, plaintiffs' efforts to bring their statutory causes of action within the private attorney general statute by alleging "on information and belief" that PNC "has likely engaged" in similar conduct with other borrowers was insufficient to confer standing under the public attorney general statute. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Amend ("Def. Mem. Opp. Amend"), pp.8-9 [Docket No. 42].  Further, the relief plaintiffs sought was strictly personal to plaintiffs and would not benefit the public.  Id., p. 10.

the expiration of the redemption period for certain very limited reasons, such as a defect in the notice of sale, or failure to comply with notice requirements.  Pl. Mem. in Opp. Dismiss, pp. 28-29.  Plaintiffs have not alleged that the foreclosure sale was affected by any of these defects.

Regarding plaintiffs' new claim for equitable estoppel, defendants maintained that the claim failed because equitable estoppel is only available when no contract exists. Id., p. 12. Here, the parties entered into the mortgage loan and Loan Modification, which are valid contracts. Id., p. 13. In addition, plaintiffs' proposed estoppel claim was futile because they did not plead any facts to support the elements of equitable estoppel: (1) a promise or inducement; (2) on which one party reasonably relied; and (3) the party will be harmed if estoppel is not applied. Id., p. 13 (citing Hydra-Max, Inc. v. Onan Corp., 450 N.W.2d 913, 919 (Minn. 1990)).

Regarding plaintiffs' proposed claim of contract reformation, defendants contended that contract reformation is only available when a mutual mistake based on a scrivener's error or a unilateral mistake accompanied by fraud or inequitable conduct was present. Id., pp. 16-17. Plaintiffs did not adequately plead fraud, nor did they allege a mutual mistake based on a scrivener's error. Therefore, the proposed claim for contract reformation was futile. Id., p. 18.

Defendants asserted that plaintiffs' revised fraud claim, which added the statement that plaintiffs submitted their May 2009 application for a loan modification after speaking with National City and being told that their monthly payments would be lower, still did not pass muster under Rule 9(b). Id., pp. 19-21. The FAC failed to allege who made this statement, did not allege a misrepresentation as to a past or existing fact, and did not allege reasonable reliance. Id., pp. 20-24. In particular, as to the element of reliance, because the terms of the TPP and Loan Modification directly contradicted any alleged oral misrepresentations, plaintiffs could not have relied on any

promises (assuming any were made) regarding the Loan Modification.  Id., p. 24.  As a result, the amended fraud claim failed as a matter of law.  Id.

For the following reasons, this Court had concluded that plaintiffs' Complaint and FAC are so fatally flawed that the Complaint must be dismissed and plaintiffs' motion for leave to amend be denied.

### 1. Plaintiffs Have No Cause of Action Pursuant to Minn. Stat. §58.13

Plaintiffs alleged that PNC violated Minn. Stat. §58.13 by making the Loan Modification knowing that plaintiffs would not be able to make the payments. Complaint, ¶52.

The Minnesota Residential Mortgage Originator and Servicer Licensing Act prohibits a mortgage servicer from making "any false, deceptive, or misleading statement or representation in connection with a residential loan transaction. . . ." Minn. Stat. §58.13.  The Minnesota Department of Commerce has jurisdiction over enforcement of the Act.  Timeline, LLC v. Williams Holdings No. 3, LLC, 698 N.W.2d 181, 189, fn.4 (Minn. Ct. App. 2005) (citations omitted).  A violation of Minn. Stat. §58.13 must be brought pursuant to the private attorney general statute, Minn. Stat. §8.31, subd. 3a.  A private right of action under Minn. Stat. §8.31, subd. 3a is "only given 'to those claimants who demonstrate that their cause of action benefits the public.'"  Id. at 189 (quoting Ly v. Nystrom, 651 N.W.2d 302, 314 (Minn. 2000)). Alleging a pattern or practice of failing to verify a borrower's ability to repay a mortgage would be sufficient to permit a private party to sue under Minn. Stat. §58.13. Kataviravong v. Mirabella Mortg., LLC, Civ. No. 12-493 (ADM/JJG), 2012 WL 2045957 at *5 (D. Minn. June 6, 2012).

Plaintiffs' claims under Minn. Stat. §58.13 fail for two reasons. First, as defendants noted, (Def. Mem. Dismiss, pp. 6, 8), plaintiffs have not plead facts to establish that the transaction at issue in their lawsuit—the 2011 Loan Modification—was a loan. No money was given to or borrowed by plaintiffs under the Loan Modification, and therefore the transaction does not come within the purview of Minn. Stat. §58.15.

Second, even if plaintiffs could establish that the statute applied to them, they have not adequately pled a public interest sufficient to allow a private right of action under Minn. Stat. §8.31. Plaintiffs' original complaint is entirely silent on the topic of public interest, stating only that "plaintiffs have a private right of action against PNC because of its violation of Minn. Stat. §58.13." Complaint, ¶53. The FAC attempted remedy this defect by stating that "Plaintiffs do not believe that PCN's conduct is limited to themselves, as customers of PNC. Rather, upon information and belief, PNC has likely engaged in similar conduct with other borrowers, which also adversely affected those borrowers." FAC, ¶31.[4] "The Eighth Circuit Court of Appeals has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim." LaCroix v. U.S. Bank, NA, Civ. No. 11-3236 (DSD/JJK), 2012 WL 2357602 at *6 (D. Minn. June 20, 2012). On the other hand, "[a]llegations 'upon information and belief' may state a claim after Iqbal and Twombly, [but] a claim must still be based on factual content that makes liability plausible, and not be a formulaic recitation of the elements of a cause of action." Regional Multiple Listing Serv. of Minn., Inc. v. American Home Reality, Civ. No. 12-965 (JRT/FLN), 2013 WL 3367132 at *15 (D. Minn. July 5, 2013)

---

[4]     Paragraph 53 of the Complaint was amended to state that plaintiffs' cause of action "benefits the public because of the activities of PNC as set forth in paragraph 31 above and the review of those practices by the Court." FAC, ¶55.

(citation omitted). Here, the complete lack of factual support for plaintiffs' bald assertion is a sufficient basis on which to find that no public benefit flows from plaintiffs' lawsuit. To meet the pleading standard of <u>Iqbal</u> and <u>Twombly</u>, plaintiffs were required to do more than make a completely unsupported statement about what defendants "likely" did with other customers.

Moreover, plaintiffs' attempt to allege a public benefit is belied by the relief they seek in the Complaint and FAC—money damages, rescission of the foreclosure and Loan Modification and reformation of the Loan Modification. These remedies are all personal to the plaintiffs and do not benefit the public in any way. <u>See</u> <u>Buetow v. A.L.S. Enterps., Inc.</u>, 888 F.Supp. 2d 956, 961 (D. Minn. 2012) ("Although there exists no hard-and-fast rule, a public benefit typically will be found when the plaintiff seeks relief primarily aimed at altering the defendant's conduct (usually, but not always, through an injunction) rather than seeking remedies for past wrongs (typically through damages). This is because individual damages. . . do not advance a public interest.") (citing <u>Zutz v. Case Corp.</u>, Civ. No. 02-1776 (PAM/RLE), 2003 WL 22848943 at *4 (D. Minn. Nov. 21, 2003) ("Where recovery is sought for the exclusive benefit of the plaintiff, there is no public benefit.")

In sum, the Court concludes that plaintiffs did not and cannot state a claim under Minn. Stat. §58.13, nor do they or can they have standing to bring such a claim. This claim should be dismissed.

### 2. Plaintiffs' Claim for Breach of the Covenant of Good Faith and Fair Dealing Fails

The FAC eliminated plaintiffs' claim for a breach of the covenant of good faith and fair dealing. Pl. Mem. Amend, p. 5. Nonetheless, because the Court is

recommending that plaintiffs not be allowed to amend their Complaint, this Court believed it prudent to address the merits of this claim as presented in the Complaint.

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted). The implied covenant of good faith and fair dealing "enforce[s] existing contractual duties, and not to create new ones." Allen v. Thom, No. A07–2088, 2008 WL 2732218, at *5 (Minn. Ct. App. July 15, 2008). "Bad faith" is defined as a party's "refusal to fulfill some duty or contractual obligation based on an ulterior motive, not an honest mistake regarding one's rights or duties." Sterling Capital Advisors, Inc. v. Herzog, 575 N.W.2d 121, 125 (Minn. Ct. App.1998).

Minnesota law does not recognize a separate cause of action for breach of this covenant where the claimed breach arises from the same conduct as a breach of contract claim. Clear Wave Hearing Instruments, Inc. v. Starkey Holding Co., Civ. No. 11-1562 (DWF/SER), 2012 WL 949953 at *10 (D. Minn. Mar. 20, 2012) (citing Medtronic, Inc. v. ConvaCare, Inc., 17 F.3d 252, 256 (8th Cir.1994)) ("Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim.") (citations omitted). Plaintiffs have not alleged a breach of contract; consequently, it follows that they cannot as a matter of law allege a breach of the covenant of good faith and fair dealing. In addition, the Complaint and FAC are devoid of any facts to support the essential elements of such a claim—defendants' unjustifiable hindrance of plaintiffs'

performance of a contract, much less bad faith.  In light of these deficiencies, this claim cannot survive and should be dismissed.

### 3.    Plaintiffs' Fraud Claim Fails

Under Minnesota law, the elements of fraud are: "(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer pecuniary damage as a result of the reliance."  Specialized Tours, Inc. v. Hagen, 392 N.W.2d 520, 532 (Minn. 1986). Plaintiffs' fraud claim fails for several reasons.

First, both as originally pled and as pled in the FAC, it does not meet the standard of Fed. R. Civ. P. 9(b), which requires that a party must "state with particularity the circumstances constituting fraud or mistake."  To meet this requirement, the complaint must identify the "who, what, where, when and how" of the claim.  United States ex.rel. Allen v. Guidant Corp., Civ. No. 11-22 (DWF/AJB), 2012 WL 878023 at *9 (Mar. 14, 2012).  For Rule 9(b) "'circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. . . [c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549 (8th Cir. 1997).

Plaintiffs claimed that PNC induced them to enter into the Loan Modification with false representations regarding the amount of interest, accrued principal and related

fees and premiums. Complaint, ¶64. The Complaint further alleged that the plaintiffs reasonably and justifiably relied on "Hans Hagen's misrepresentations," though the Complaint does not identify Mr. Hagen or describe what he told plaintiffs. The FAC amends this allegation to state that "PNC" made the misrepresentations. FAC, ¶76. Plaintiffs did not allege with the requisite specificity who made the allegedly false representations. "Hans Hagen" is not identified and naming the corporation as the source of the statements is not enough.

Second, even if plaintiffs could cure the "who, what, when and how" of the claim, the fraud claim fails as a matter of law because plaintiffs failed to plead the misrepresentation of a past or existing fact and cannot establish that they relied on the alleged oral misrepresentations when they entered into the Loan Modification. In fact, plaintiffs made four payments under the Loan Modification they now claim was tainted by fraud. (Complaint, ¶¶32-35; FAC, ¶¶33-36).

Plaintiffs acknowledge that they did not plead that defendants misrepresented a past or existing material fact, but argued that fraud in connection with a future event can be found when the party making the misrepresentation has no intention of performing when the promise was made. Pl. Mem. Opp. Dismiss, p. 23 (citing McElrath v. Electric Inv. Co., 131 N.W. 380 (Minn. 1911); Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 747 (Minn. 2000)). Plaintiffs stated that "National City and PNC had the present intention not to provide a loan modification consistent with those representations to plaintiffs." Id., p. 24. This statement is not reflected in the FAC. But even if it true, this is the sort of conclusory statement that does not meet Rule 8 standards, much less the heightened standard required by Rule 9(b). See Raden v.

<u>BAC Home Loans Serv., LP</u>, Civ. No. 12-1240 (PJS/TNL), 2013 WL 656624 at *4 (D.

Minn. Feb. 22, 2013) (dismissing plaintiffs' fraud claim based on bank's failure to modify

their mortgage and noting that "nothing in their complaint even hints as to why Bank of

America would have promised the Radens a HAMP loan modification without intending

to give them a HAMP loan modification.").

It is difficult to imagine a scenario in which PNC or National City would have

enticed plaintiffs to enter into a loan modification by promising a lower monthly payment,

never intending to deliver such an agreement and then delivering an agreement for

plaintiffs' signature that did not, in fact, lower their payments.  At any rate, plaintiffs pled

no facts in the Complaint or FAC in support of such a scheme.

Third, as part of the Loan Modification, plaintiffs signed a "Notice of No Oral

Agreements."  [Docket No. 1-2].[5]  In signing the Notice, plaintiffs acknowledged that the

Loan Modification "represents the final agreement between the parties and may not be

contradicted by evidence of prior contemporaneous or subsequent oral agreements of

the parties."  <u>Id.</u>  Plaintiffs have not alleged any fraud, duress or coercion in connection

with signing the Notice, but only state that the Notice was not "effective" as to fraud in

the inducement.  Pl. Mem. Opp. Dismiss, p. 24.  This argument is meritless.  Plaintiffs

did not plead that they were fraudulently induced to sign the Notice in either the

Complaint or the FAC.  Furthermore, to the extent plaintiffs are endeavoring to

---

[5]     The Loan Modification containing the Notice of No Oral Agreements was filed in
connection with defendants' Notice of Removal and originally appeared as an
attachment to plaintiffs' state court motion for injunctive relief.  The Court may consider
the Loan Modification without converting defendants' motion to dismiss to a motion for
summary judgment.  <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir.
1999) (in a Rule 12 motion to dismiss the court "may consider. . . materials that are
necessarily embraced by the pleadings.")

bootstrap their general claim of fraud onto a claim of fraud in connection with the Notice, that claim fails for the same reasons their fraud claims fails—they did not plead with the requisite specificity—and, at any rate, by making several payments under the loan modification, they ratified any alleged fraud that may have occurred in connection with the Loan Modification.

Finally, plaintiffs did not adequately plead reliance, one of the essential elements of fraud. The Complaint alleged that plaintiffs relied on "Hans Hagen's" misrepresentations without further explanation. Complaint, ¶67. In their brief in opposition to defendants' motion to dismiss, plaintiffs asserted that they did not take advantage of "other opportunities" to address their past due loan balance, such as obtaining private financing or renting their residence. Pl. Mem. Opp. Dismiss, p. 22. Notably, these statements were not even alleged in the Complaint.[6] More importantly, plaintiffs could not have relied on any oral misrepresentations regarding the terms the Loan Modification because the written terms were clearly set forth in the agreement, which plaintiffs signed. Plaintiffs did not allege that their signatures on the Loan Modification were obtained by fraud, duress or coercion. Therefore, the Court concludes that as a matter of law, their fraud claim cannot stand. See Quenroe v. Mortgage Electronic Regis. Sys., Inc., Civ. No. 09-3439 (ADM/JSM), 2012 WL 425175 at *2 (D. Minn. Feb. 9, 2012) ("Where an oral misrepresentation. . . directly contradicts the terms of a written contract, reliance on the oral misrepresentation is unjustified as a matter of law.") (citing Davidson v. Wilson, 973 F.2d 1391, 1401 (8th Cir.1992) (citing St. Croix Printing v. Rockwell Int'l Corp., 428 N.W.2d 877, 882 (Minn. Ct. App.1988)).

---

[6]    The FAC includes these representations, but the FAC is obviously unexecuted and even the FAC contains no facts to support this statement.

### 4. Plaintiffs' Minnesota Consumer Fraud Act Claim Fails

For the same reasons set forth in Section A(1), above, plaintiffs' claims under the MCFA, Minn. Stat. §325F.69 et. seq., fail. Plaintiffs claim depends on the private attorney general statute and there is no demonstrable public benefit to a lawsuit arising out of this one-on-one transaction.[7]

### 5. Plaintiffs' Proposed Promissory Estoppel Claim Fails

Plaintiffs' FAC proposed a new claim for promissory estoppel. FAC, ¶¶57-62. Plaintiffs alleged that defendants promised a loan modification that would lower their monthly payments, plaintiffs relied on those representations, and were harmed by defendants' failure to provide what they had promised. FAC, ¶¶60. As a result, plaintiffs contended that PNC should be estopped from obtaining possession of the property through the eviction proceeding and the foreclosure should be rescinded. Id., ¶61. Plaintiffs proposed claim for promissory estoppel is futile.

"[Promissory estoppel] requires proof that 1) a clear and definite promise was made, 2) the promisor intended to induce reliance and the promisee in fact relied to his or her detriment, and 3) the promise must be enforced to prevent injustice." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000). The promisee's reliance

---

[7] Although not argued by defendant, the Court observes that MCFA applies to fraud, misrepresentation, or deceptive practices made in connection with the sale of merchandise. Minn. Stat. §325F.69, subd. 1. Banbury v. Omnitrition Intern., Inc., 533 N.W.2d 876, 882 (Minn. Ct. App. 1995) ("The [MCFA] does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise.") (citation omitted). "Merchandise" within the meaning of the statute means "objects, wares, goods, commodities, intangibles, real estate, loans or services." Minn. Stat. §325F.68, subd. 2. The transaction at issue is not a loan, but a loan modification agreement. Therefore, it is not clear to this Court that the MCFA even applies to this transaction.

must be reasonable. <u>Northern Petrochemical Co. v. United States Fire Ins. Co.</u>, 277 N.W.2d 408, 410 (Minn. 1979). Equitable estoppel applies only where no contract exists. <u>Banbury</u>, 533 N.W.2d at 881 (citing <u>Sacred Heart Farmers Coop. Elevator v. Johnson</u>, 232 N.W.2d 921, 923 n. 1 (Minn.1975)). Plaintiffs' relationship with PNC is governed by two contracts, the original mortgage and the Loan Modification

Even if the Loan Modification was not a valid contract, a party is eligible to assert estoppel "only if the other party's conduct led it to change its position." <u>Continental Cas. Co. v. Knowlton</u>, 232 N.W.2d 789, 797 (1975). In other words, plaintiffs must show reliance on the promise "to his injury, detriment or prejudice." <u>Kmart Corp. v. County of Stearns</u>, 710 N.W.2d 761, 771 (Minn. 2006); <u>see also</u> <u>Stumm v. BAC Home Loans Serv., LP</u>, 914 F.Supp. 2d 1009, 1018 (D. Minn. 2012) ("detrimental reliance is a critical element of equitable estoppel"); <u>Krutchen v. Zayo Bandwidth Northeast, LLC</u>, 591 F.Supp. 2d 1002, 1017 (D. Minn. 2008) (detrimental reliance requires an actual change in a party's position). Plaintiffs pled vaguely that they gave up opportunities "for addressing their financial circumstances and the status of the Mortgage Loan" that they "may have had at the time." FAC, ¶60. This allegation does not meet the Rule 8 pleading standard. <u>See</u> <u>Raden</u>, 2013 WL 656624 at *4 (rejecting as inadequate under Rule 9(b) and Rule 8 plaintiffs' allegation that they detrimentally relied on bank's promise of a loan modification by failing to pursue "loss mitigation options.").

But most significantly, plaintiffs failed to plead or show that they reasonably relied on PNC's alleged oral misrepresentations. Certainly by the time plaintiffs received the written Loan Modification, they were aware that it did not comport with what they claim they were told—that their monthly payment would be lowered. FAC, ¶29. The FAC is

silent as to how plaintiffs could have relied on an oral misrepresentation in light of their signature on the Loan Modification and Notice of No Oral Agreements.

For all of these reasons, this Court concludes that plaintiffs' proposed claim for promissory estoppel is futile.

### 6.    Plaintiffs' Proposed Contract Reformation Claim Fails

The FAC alleged that "the failure of the Loan Modification to reduce the monthly payments under the Mortgage Loan was caused by mutual mistake of the parties as to the actual terms of the Loan Modification, or because of the unilateral mistake or fraud of PNC."  FAC, ¶66.

Under Minnesota law, the elements of contract reformation are as follows:

> (1) [a] valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties or a unilateral mistake accompanied by fraud or inequitable conduct by the defendant.

Nichols v. Shelard Nat'l Bank, 294 N.W.2d 730, 734 (Minn. 1980).  A claim of unilateral mistake must be pled with particularity pursuant to Fed. R. Civ. P. 9(b) (a party must "state with particularity the circumstances constituting fraud or mistake.").  To meet these requirements, the complaint must identify the "who, what, where, when and how" of the claim.  United States ex.rel. Allen v. Guidant Corp., Civ. No. 11-22 (DWF/AJB), 2012 WL 878023 at *9 (Mar. 14, 2012).  "[I]n order to have a mutual mistake, it is necessary that both parties agree as to the content of the document but that somehow through a scrivener's error the document does not reflect that agreement."  Nichols, 294 N.W.2d at 734 (emphasis added).  Plaintiffs have not adequately pled fraud in connection with the Loan Modification in that it is evident that the plaintiffs entered into

the Loan Modification knowing what its terms were.  FAC, ¶¶29, 30.  Plaintiffs did not plead the existence of a mutual mistake through a scrivener's error, and there is no evidence that any such mistake occurred.  For those reasons, plaintiffs' proposed contract reformation claim is futile and should not be permitted.

### 7.    Plaintiffs' Suit Should Be Dismissed with Prejudice

"Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."  <u>Michaelis v. Neb. State Bar Ass'n</u>., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  <u>See</u> <u>McLean v. United States</u>, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); <u>McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.</u>, 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (a <u>pro</u> <u>se</u> litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); <u>Ikechi v. Verizon Wireless</u>, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797 at *5, n.6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL

2118791 at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

Here, in light of plaintiffs' agreement to the Loan Modification, the explicit description contained in the Loan Modification of its terms, and the fact that plaintiffs made payments under the Loan Modication, the Court can conceive of no set of circumstances through which the defects in the Complaint could be cured by re-pleading. Indeed, the FAC cured none of the defects in the Complaint. On this basis, the Court recommends dismissal of plaintiffs' suit with prejudice.

## C.   Plaintiffs' Motion for Preliminary Injunctive Relief [Docket No. 19]

Plaintiffs were unable to redeem their property during the redemption period and they did not vacate the premises. Freddie Mac began an eviction action in state district court to remove them. Affidavit of W. Bruce Hubbard ("Hubbard Aff."), ¶10 [Docket No. 21]; Plaintiffs' Memorandum of Law in Support of their Motion for a Temporary Injunction ("Pl. Injunction Mem."), p. 7 [Docket No. 20]. Plaintiffs moved for an order enjoining the state district court injunction proceedings, arguing that they met all of the standards for a preliminary injunction—threat of irreparable harm, the harm to them in not issuing the injunction outweighed the harm to defendants, they have demonstrated a probability of success on the merits of their claims, and that it was in the public interest to issue an injunction because "public policy favor[s] allowing consumer to maintain their residences." Pl. Injunction Mem., pp. 10-15.

Defendants opposed the motion, arguing that the Anti-Injunction Act, 28 U.S.C. §2283, prohibited this Court from enjoining the state court eviction proceedings because

none of the limited exceptions to the Anti-Injunction Act applied. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Injunction ("Def. Opp. Injunction Mem."), pp. 8-11. Defendants also submitted that plaintiffs' motion failed on its merits, as plaintiffs failed to make out a case for an injunction under any of the <u>Dataphase</u> factors. <u>Id.</u>, pp. 13-20.

In light of this Court's recommendation that plaintiffs' Complaint be dismissed with prejudice and plaintiffs not be permitted to amend their Complaint, plaintiffs' motion for injunctive relief is moot. However, even if the Court had reached the merits of plaintiffs' motion, it would have recommended denying it. Normally, the Court would have analyzed a request for injunctive relief by discussing the <u>Dataphase</u> factors.[8] But in this case, the Anti-Injunction Act prohibits the federal district court from enjoining the state court proceeding. 28 U.S.C. §2283.

The Anti–Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Supreme Court has interpreted the Act as 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions' included in the language of the statute." <u>Canady v. Allstate Ins. Co.</u>, 282 F.3d 1005, 1013–1014 (8th Cir. 2002) (quoting <u>Atlantic Coast Line R.R. v. Locomotive Eng'rs</u>, 398 U.S. 281, 286–87 (1970), <u>abrogation on other grounds as recognized</u> by <u>Arkansas Blue Cross & Blue Shield v.</u>

---

[8]    Having determined that plaintiffs cannot succeed on the merits, of course, is fatal to plaintiffs' motion for injunctive relief. <u>See</u> <u>Mid–America Real Estate Co.</u>, 406 F.3d at 972 ("an injunction cannot issue if there is no chance of success on the merits").

Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 821–22 (8th Cir. 2009)). "Courts must construe the exceptions to the Anti–Injunction Act narrowly and resolve doubts in favor of letting the state action proceed." Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., 77 F.3d 1063, 1068 (8th Cir.1996).

Plaintiffs have not cited any Act of Congress that authorizes the Court to stay the district court eviction proceeding; therefore, the first exception to the Anti-Injunction Act does not apply. No judgment has been entered; consequently, the third exception to "protect or effectuate" a judgment does not apply. Plaintiffs argued that the second exception to the Anti-Injunction Act—if an injunction is necessary "in aid of [this Court's] jurisdiction"—governs. Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction ("Pl. Reply"), pp. 1-6 [Docket No. 43]. According to plaintiffs, the Anti-Injunction Act does not bar their claims because they could not bring their claims in the state court eviction proceedings, which are summary proceedings. Id., p. 4 (citing Minn. Stat. §540B.001, subd. 4). If an injunction did not issue, plaintiffs would be precluded from having this Court adjudicate their claims before they were faced with eviction. Id., p. 5.

The "in aid of jurisdiction" exception has been interpreted to mean "'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" Badrawi v. Wells Fargo Home Mortg., Inc., Civ. No. 12-128 (DWF/JJG), 2012 WL 777338 at *2 (D. Minn. Mar. 8, 2012) (citing Versacold USA, Inc. v. Inland Am. Brooklyn Park Atlas, L.L.C., Civ. Nos. 09–2669, 09–2857 (DSD/JJK),

2009 WL 3617544, at *2 (D. Minn. Oct. 29, 2009) (quoting <u>Atlantic Coast Line R. R.</u>, 398 U.S. at 295)).

In <u>Badrawi</u>, Wells Fargo bank began eviction proceedings against plaintiff after their home was sold at foreclosure. <u>Id.</u> at *1. Plaintiff filed an action in state court alleging six causes of action against Wells Fargo and Wells Fargo removed to federal district court. <u>Id.</u> Wells Fargo then moved to dismiss and plaintiff moved to enjoin W4ells Fargo from completing the state court eviction proceedings. <u>Id.</u> The district court analyzed the motion under the Anti-Injunction Act and concluded that "interference" with the Court's jurisdiction was not an issue. <u>Id.</u> at *2. <u>See</u> <u>also</u> <u>Schulz v. Wells Fargo Bank, NA</u>, Civ. No. 12-2147 (JNE/JSM), 2012 WL 6591457 at *2 (D. Minn. Dec. 18, 2012) (dismissing plaintiff's claim for injunctive relief to stay a state court eviction proceeding as barred by the Anti-Injunction Act); <u>McCauley v. Ocwen Fed. Bank, FSB</u>, Civ. No. 09-3183 (JRT/JSM), 2010 WL 760438 at *3 (D. Minn. Feb. 26, 2010) (denying motion to enjoin state court eviction proceedings and noting that an injunction would, in essence, be an impermissible appeal of a state court judgment). The same result must be reached here. There are no facts present in this case that would lead this Court to conclude that it could enjoin the state eviction proceeding.

In conclusion, even if this Court had not determined that this case should be dismissed, it would recommend denial of plaintiffs' Motion for a Preliminary Injunction on grounds that the Anti-Injunction Act precludes it from enjoining the state court eviction action.

## IV.    RECOMMENDATION

For the reasons set forth above, it is recommended that:

(1)    Defendants' Motion to Dismiss [Docket No. 13] be **GRANTED**;

(2)    Plaintiffs' Motion for a Preliminary Injunction [Docket No. 19] be **DENIED** as moot;

(3)    Plaintiffs' Motion for Leave to Amend Complaint [Docket No. 33] be **DENIED**;

(4)    This matter be dismissed with prejudice.

Dated: August 20, 2013

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 3, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.